IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Michael R. Escue,

      Plaintiff,

      v.                          Case No. 2:09-cv-765

Sequent, Inc., et al.,

      Defendants.

<u>OPINION AND ORDER</u>

This is an action filed by plaintiff Michael R. Escue (hereinafter "Escue"), a resident of Alabama, against Sequent, Inc. (hereinafter "Sequent"), a closely held Ohio corporation with its principal place of business in Dublin, Ohio. Also named as defendants are William F. Hutter, the CEO and majority shareholder of Sequent (hereinafter "Hutter"), and other individual shareholders and directors of Sequent, including Chairman Michael L. Schoonover, Treasurer John E. Boyer, Glenn J. Gettman, Corporate Secretary Steven R. Kerber, and Thomas A. Ewers. Jurisdiction is based on diversity citizenship, as well as federal question jurisdiction.

According to the first amended complaint filed on November 16, 2009 (Doc. 19), Escue was the sole shareholder of Better Business Solutions of Alabama, Inc. ("BBSA"), a professional employee organization ("PEO") located in Birmingham, Alabama, which provided human resource services to business clients in the Birmingham area. PEOs provide services typically preformed by a human resources department, including payroll, audit, tax management, the administration of employee benefit plans, employment and labor law compliance, workers' compensation claims and risk management.

Sequent is also a PEO which provides human resource services, including health, dental and vision insurance coverages and coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), to its own employees, and to business clients ("Jobsite Employers") and employees ("Jobsite Employees")leased by Sequent to Jobsite Employers.  Sequent is the sponsor of the Sequent, Inc. Flexible Benefits Plan ("the Plan"), an employee benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA").  Sequent also created the Sequent Welfare Benefits Trust ("the Trust") for the purpose of holding Plan assets, receiving premium payments received from Jobsite Employers and Employees and Sequent's own employees, and paying those premiums to insurers.

Hutter and the other individual defendants also formed Accompany Benefits, LLC ("ABL"), an Ohio limited liability company currently registered under the trade name SRBG.  ABL was formed to offer consulting services in the areas of employee benefits design, life, health and disability insurance, and retirement and non-qualified deferred compensation plans.  ABL provides consulting services to Sequent, the Plan and the Trust, and the shareholders and directors of ABL are also shareholders and directors of Sequent.

Escue alleges that beginning in 2005, and continuing into 2006, he engaged in negotiations with Hutter concerning the merger of BBSA with Sequent.  In August of 2005, and again in April of 2006, Hutter told Escue that Sequent was the subject of a routine Department of Labor ("DOL") audit; however, Escue was aware that the DOL routinely audited PEOs, and thought that this information was not significant.  During the negotiations, Hutter also

2

described Sequent's business practice of "tiering," which consisted of charging some Jobsite Employers more for insurance premiums in order to subsidize the coverage provided to other Jobsite Employers who were charged lower premiums to attract them as clients. Hutter represented that this practice was the reason for Sequent's success, and that it was legal and had been approved by specialized ERISA counsel. A business valuation expert was employed to value both companies, based on the 2005 financial statements and projections for 2006. BBSA was valued at $1,756,455, and Sequent was valued at $14,973,040.

Escue further alleges that a draft of the proposed merger agreement was exchanged in December of 2006. Section 6.08 of the merger agreement disclosed that Sequent was the subject of a "DOL Investigation into Sequent's Section 125 Plan." Escue assumed that this meant the routine audit which was referred to by Hutter during the negotiations. Hutter and the other individual defendants signed a corporate resolution, effective December 19, 2006, which approved the merger agreement. Escue then signed the agreement, and Hutter signed the merger agreement and a closing certificate for the merger as CEO and President of Sequent.

It is alleged in the first amended complaint that effective January 1, 2007, Sequent acquired BBSA through a merger transaction. Escue surrendered his BBSA shares, valued at $1,756,455, for 14,000 shares of Sequent common stock with a negotiated value of $1,871,630. After the merger, Escue became a director of Sequent, and also entered into an employment agreement with Sequent which specified the payment of an annual salary of $160,000 and incentive compensation in the amount of 10% of BBSA's earnings for the fiscal year.

3

Escue alleges that in order to procure the merger between BBSA and Sequent, Hutter and the other individual defendants made false statements to him and concealed or failed to disclose material facts bearing upon the value of Sequent and the shares acquired by Escue pursuant to the merger agreement.  Escue alleges that prior to the merger, Sequent, Hutter, and the other individual defendants engaged in improper and illegal activities which exposed Sequent to potential and actual financial liability and which adversely impacted the value of the Sequent shares acquired by Escue pursuant to the merger agreement.  Escue further alleges that the financial statements provided to the valuation expert were false because Sequent failed to disclose material facts about Sequent, including the fact that Sequent had been the target of a DOL criminal investigation since January of 2006.

Specifically, Escue alleges that prior to the merger, Hutter and the other individual defendants approved a plan for Sequent to make loans in a total amount of $347,918 to the individual defendants.  Escue alleges that as a result of these loans, Sequent's financial status failed to meet accounting standards established by the Employer Services Assurance Corporation, an entity which provides accreditation and client assurance programs for the PEO industry.  In an effort to rectify this situation, in October of 2005, Hutter and the other individual defendants allegedly approved the sale of the loans to ABL.  However, since ABL only had $90,000 in available cash, on January 12, 2006, Hutter and the other individual defendants allegedly caused the Trust, in violation of ERISA, to illegally pay $257,918 to ABL, which then transferred this sum to Sequent.  On January 27, 2006, the DOL served written notice on Sequent that it was under criminal

4

investigation.  Escue alleges that Hutter and the other individual defendants then reversed the transfer of funds by returning the $257,918 to the Trust as of February 27, 2006.  Escue further alleges that later in 2006, Hutter and the other individual defendants arranged to have Sequent forgive the loans made to them, serving no legitimate business purpose.

Escue alleges that at no time before the merger was he informed that Sequent was the subject of a DOL criminal investigation.  He claims that he first learned about the criminal investigation at a Sequent board meeting on September 24, 2007. Escue alleges that he did not learn the full extent of the DOL criminal investigation until early December of 2008, when Sequent's counsel issued a memorandum describing the investigation.  Escue alleges that as a result of the criminal investigation, various individuals, including Hutter, have incurred legal fees exceeding $1 million, which have been paid partially or entirely by the Trust, that Sequent has paid overinflated severance packages to or entered into unnecessary contracts with Sequent employees as "hush money," and that Sequent paid $230,000 to the DOL as a civil settlement which was really the obligation of ABL, as it reflected the amount of funds which ABL improperly obtained from the Trust.

Escue alleges that in mid-2005, Hutter and the other individual defendants caused ABL to increase the fees it charged to the Plan and Trust, thus doubling the amount of fees charged on an annual basis.  Escue further alleges that after being informed by the DOL that a criminal investigation had been commenced, in March of 2006, Hutter instructed Sequent employees to suspend all further payments from the Trust to ABL.

Escue also alleges that beginning prior to the merger, Hutter

and the other individual defendants caused Sequent to charge its Jobsite Employer clients an inflated administrative fee for services provided, to misrepresent the amount charged by insurers for insurance premiums, and to overcharge employers for insurance premiums.  Sequent allegedly retained the difference between the inflated price and the actual cost of coverage charged by the insurers for its own benefit.  Escue alleges that Sequent stopped this practice after being informed of the DOL criminal investigation.

Escue further alleges that Sequent's practice of "tiering" by overcharging some Jobsite Employer clients for insurance premiums in order to be able to offer other Jobsite Employer clients a lesser rate and attract more clients was illegal conduct constituting a breach of fiduciary duty under ERISA. Escue alleges that since Sequent has been unable to charge enough in excess fees to support the below cost subsidies, the Trust lacked sufficient funds to make premium payments, and Sequent has loaned money to the Trust in an amount exceeding $1.5 million to cover the cost of those premiums.  Escue further alleges that Hutter's previous representations that the practice of "tiering" had been approved by specialized ERISA legal counsel were shown to be false at a director's meeting in June of 2009, where Hutter proposed that Sequent ought to obtain an outside expert opinion and consultant on the issue of "tiering" and compliance with ERISA.

Escue further alleges that since 2005, Sequent has charged its clients and its own employees inflated rates for vision, dental and COBRA coverage above the actual amount of administrative expenses and premium costs incurred by Sequent and the Trust.  Escue further alleges that since 2005, Sequent has charged its Jobsite Employer

clients an administrative fee which included a hidden "risk management fee" which did not reflect any administrative costs to Sequent, but rather was an arbitrary charge imposed solely for the fraudulent purpose of padding Sequent's fees.

In the First Claim for Relief of the first amended complaint, Escue seeks the common law breach of contract remedy of rescission of the merger agreement. In the Second Claim for Relief, Escue asserts, in the alternative, a claim for monetary damages for breach of the merger agreement. In the Third Claim for Relief, Escue seeks rescission of the merger agreement on the grounds of common law fraudulent inducement, and in the Fourth Claim for Relief, in the alternative, Escue seeks monetary damages for fraudulent inducement. In the Fifth and Sixth Claims for Relief, Escue asserts fraud claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5(b), seeking the remedy of rescission of the merger agreement, and, in the alternative, monetary damages. In the Seventh Claim for Relief, Escue asserts a claim against Hutter and the other individual defendants under Ohio Rev. Code §1701.93(A)(1) for damages proximately caused by their misrepresentations and omissions. In the Eighth Claim for Relief, Escue asserts a claim for breach of fiduciary duty against Hutter and the other individual defendants. In the Ninth and Tenth Claims for Relief, Escue asserts claims against Sequent, Hutter and the other individual defendants for the unlawful sale of a security under Ohio Rev. Code §§ 1707.43 and 1707.44, seeking rescission of the merger agreement and, in the alternative, damages. In the Eleventh Claim for Relief, Escue alleges that Sequent breached the employment agreement entered into between him and Sequent by

7

failing to pay compensation due him under the terms of the agreement. In the Twelfth Claim for Relief, Escue requests declaratory judgment that the non-competition and non-solicitation provisions of the employment agreement are void and unenforceable.

Sequent has asserted counterclaims against Escue. The First Counterclaim asserts a claim for damages for breach of the merger agreement based upon an alleged distribution of $400,000 by BBSA to Escue after the merger agreement was executed, the alleged improper receipt of commissions by Escue and BBSA, and Escue's alleged failure to disclose an ownership interest in entities that had business relationships with BBSA. The Second Counterclaim alleges that Escue breached a fiduciary duty to Sequent in his management of Sequent's Birmingham, Alabama, office through alleged self-dealing and other misconduct. The Third Counterclaim asserts a claim for tortious interference with contractual relationships. Sequent contends that Escue published certain allegedly false statements contained in the complaint to customers of Sequent in order to seek leverage to support his rescission demands, causing several customers to terminate their contractual agreements with Sequent. Sequent's Fourth Counterclaim asserts a claim for breach of the employment agreement.

On October 21, 2009, defendants Schoonover, Boyer, Gettman, Kerber and Ewers (hereinafter referred to as "the defendants") filed a motion to dismiss the Second through Sixth Claims for Relief of the original complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for relief. In the first amended complaint filed on November 16, 2009, the Second through Sixth Claims were renumbered as the Third through Seventh Claims, and additional claims were added. On November 16, 2009, Escue filed a

memorandum contra the motion to dismiss.  The defendants filed a reply brief arguing that the Third through Seventh Claims and newly added Ninth and Tenth Claims should be dismissed as to them.  By order dated August 13, 2010, this court indicated that it would consider the reply as a renewed motion to dismiss the first amended complaint.  On January 28, 2010, Escue filed a motion to dismiss Counterclaims Three and Four pursuant to Rule 12(b)(6).  Those motions are now before the court for a ruling.

I. Standards for Rule 12(b)(6) Motions

In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005).  To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005).  Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.  Id.

While the complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise the claimed right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must create a reasonable expectation that discovery will reveal evidence to support the claim.  Campbell v. PMI Food Equipment Group, Inc., 509

F.3d 776, 780 (6th Cir. 2007).  A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  Id. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Where the facts pleaded do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as required under Fed.R.Civ.P. 8(a)(2).  Ibid.

In evaluating a motion to dismiss, a court generally is limited to the complaint and exhibits attached thereto. Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001).  However, the court may also consider a document or instrument which is attached to the complaint, or which is referred to in the complaint and is central to the plaintiff's claim.  Fed.R.Civ.P. 10(c)("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997).

II. Third and Fourth Claims - Fraudulent Inducement

The Third and Fourth Claims assert claims for fraudulent inducement.  Escue alleges that the defendants failed to inform him of the ongoing DOL criminal investigation and failed to advise him

10

of Sequent's practice of charging inflated rates for vison and dental plans and COBRA coverage.  Doc. 19, ¶¶ 126, 128.  Escue further alleges that the defendants, "whose numbers include an experienced corporate attorney and multiple certified public accountants, knew, or should have known, that the financial statements were fraudulent and misleading" yet failed to disclose that the financial statements were fraudulent and misleading.  Doc. 19, ¶ 129.

The defendants argue that the first amended complaint fails to plead fraud with particularity as required under Fed.R.Civ.P. 9(b).  Rule 9(b) states that "a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Rule 9(b).  Rule 9(b) requires a plaintiff to allege the time, place, and content of the alleged misrepresentation on which he or she relied, the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud.  Bennett v. MIS Corporation, 607 F.3d 1076, 1100 (6th Cir. 2010).

The requirements of Rule 9(b) are relaxed where information is only within the opposing party's knowledge.  Michaels Building Co. v. Ameritrust Co., N.A., 848 F.2d 674, 680 (6th Cir. 1988)("Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control.")  "Rule 9(b) does not require omniscience; rather, the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as th the nature of the claim."  Id.  However, while fraud may be pled on information and belief where the facts relating to the alleged fraud are peculiarly within the

perpetrator's knowledge, the plaintiff must still set forth the factual basis for his belief.  <u>United States ex rel. Bledsoe v. Community Health Systems, Inc.</u>, 501 F.3d 493, 512 (6th Cir. 2007). Escue has noted that after the merger of BBSA with Sequent, his personal calendar was incorporated into the Sequent database, and that he no longer has access to information concerning some exact dates and times.

Under Ohio law, a corporate officer may be held personally liable for corporate contracts if he engages in fraud.  <u>Yo-Can, Inc. v. The Yogurt Exch., Inc.</u>, 149 Ohio App.3d 513, 778 N.E.2d 80 (2002).  An officer can also be "liable for a tort committed by the corporation under his control, or with his participation or cooperation." <u>Central Benefits Mut. Ins. Co. v. RIS Admin. Agency, Inc.</u>, 93 Ohio App.3d 397, 403, 638 N.E.2d 1049 (1994).

A claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation. <u>ABM Farms, Inc. v. Woods</u>, 81 Ohio St.3d 498, 502, 692 N.E.2d 574 (1998).  The elements of fraudulent inducement are essentially the same as those for fraudulent misrepresentation, fraudulent concealment, and fraudulent nondisclosure.  <u>Gentile v. Ristas</u>, 160 Ohio App.3d 765, 781, 828 N.E.2d 1021 (2005).  The elements of fraud under Ohio law are: (1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance on the representation or concealment, and (6) an injury proximately caused by that reliance.  <u>Williams v. Aetna</u>

<u>Fin. Co.</u>, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998).

In arms length business transactions, each party is ordinarily presumed to have the opportunity to ascertain relevant facts available to others similarly situated, and in such instances neither party has a duty to disclose material information to the other. <u>Blon v. Bank One, Akron, N.A.</u>, 35 Ohio St.3d 98, 101, 519 N.E.2d 363 (1988). However, full disclosure may be required of a party to a business transaction where such disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts. <u>Id.</u>; <u>Miles v. Perpetual Savings & Loan Co.</u>, 58 Ohio St.2d 97, 101, 388 N.E.2d 1364 (1979); <u>see</u> <u>also</u> <u>Onyx Environmental Services, LLC v. Maison</u>, 407 F.Supp.2d 874, 879 (N.D.Ohio 2005)("An officer can be liable for another officer's misrepresentations where he or she has a duty to speak). A party has a duty to speak and will be liable for non-disclosure:

> if the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another [party] to act or refrain from acting, and the non-disclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading.

<u>Miles</u>, 58 Ohio St.2d at 100.

The defendants argue that they were not involved in the merger negotiations, and therefore made no misrepresentations to Escue. However, Escue argues that the defendants, acting as directors and shareholders of Sequent, affirmed and approved the representations made in the merger agreement by authorizing Sequent to enter into that agreement, and that he reasonably relied on the approval of the merger agreement by the defendants. Escue notes that approval of the merger by the defendants as members of Sequent's board of

13

directors was a mandatory closing condition (Merger Agreement §9.01).

Escue has alleged that the merger agreement included the following representations: (1) that Sequent had not operated in an illegal manner in any way which would have an adverse impact on Sequent (Merger Agreement §6.05); (2) that the audited financial statements for the fiscal years ending in 2003 to 2006 and the unaudited financial statements for the three months ending in September 30, 2006, fairly presented the financial position of Sequent (Merger Agreement §6.06); (3) that Sequent was not the subject of a continuing investigation by any governmental entity except for a "DOL Investigation into Sequent's Section 125 Plan" which was not specifically described as being a criminal investigation as opposed to a routine audit (Merger Agreement §6.08); (4) that Sequent had operated in compliance with ERISA, Merger Agreement §6.10; and (5) that no representation or warranty in Article VI of the Merger Agreement contained any untrue statements or omissions of material fact (Merger Agreement §6.19). Doc. 19, ¶¶ 67, 70.

In addition, Escue quotes §8.04(a) of the Merger Agreement, which states:

> Notwithstanding any right of any party to the Agreement to fully investigate the affairs of any other party to the Agreement and notwithstanding any knowledge of facts determined or determinable by any party pursuant to such investigation or right of investigation, each party to the Agreement has the right to rely fully upon the representations and warranties of any other party to the Agreement contained in this Agreement or in any Schedule or Exhibit or Agreement in connection with the Merger[.]

Doc. 19, ¶ 68.

Defendants allege that the fact that they approved the merger

14

agreement is insufficient to allege an intent to defraud.  Under
Ohio law,

> directors [of a corporation] are not held as a matter of
> law to know all its affairs, or all the transactions or
> business conducted by the corporation, or at all times to
> know just what its books and papers contain; and it is
> well settled that such knowledge cannot be imputed to
> them for the purpose of charging them with liability.

Goff v. Emde, 32 Ohio App. 216, 221, 167 N.E. 699 (1928).  However,
Sequent is a closely held corporation; thus, the defendants
presumably have a greater degree of knowledge and control over
Sequent's operations than would the outside directors of a large
corporation.  Defendant Schoonover is chairman of Sequent's board
of directors, defendant Boyer is Sequent's treasurer, and defendant
Kerber is Sequent's corporate secretary.

Under Rule 9(b), intent may be averred generally.  In
addition, the first amended complaint specifically alleges
knowledge on the part of the defendants in several respects.  Escue
alleges that prior to the merger, each of the defendants and Hutter
received loans from Sequent, approved the sale of the loans to ABL,
illegally caused the Trust to pay cash to ABL to cover the
purchase, reversed the transaction upon learning of the DOL
criminal investigation, then caused Sequent to forgive the loans.
Doc. 19, ¶¶ 21-28.  Escue further alleges that in 2005, Hutter and
the defendants caused ABL to charge excessive fees for the services
it provided to the Trust; this practice was one of the subjects of
the DOL criminal investigation.  Doc. 19, ¶¶ 31, 35.  Escue alleges
that Hutter and the defendants also approved Sequent's illegal
practice of charging inflated insurance premiums, another subject
of the DOL criminal investigation.  Doc. 19, ¶¶ 36-41.  Escue also
alleges that Sequent's financial statements, which were provided to

15

the outside expert for purposes of determining Sequent's worth, were inflated and inaccurate because they did not disclose that Sequent's income was partly the result of its illegal practices or that Sequent was under criminal investigation by the DOL.  Doc. 19, ¶¶ 86-87.  Escue alleges that the defendants, whose numbers included an experienced corporate attorney and multiple certified public accounts, knew, or should have known, that the financial statements were fraudulent and misleading.  Doc. 19, ¶ 88.  These allegations provide a sufficient factual basis as to why the defendants knew or should have known that the merger agreement contained false and misleading statements and omitted material facts.

The Third and Fourth Claims, which incorporate the previous paragraphs of the first amended complaint, comply with Rule 9(b)'s requirements of alleging fraud with particularity, and the motion to dismiss those claims is not well taken.

### III. Fifth and Sixth Claims - Federal Securities Law Claims

### A. Failure to State a Claim

Defendants argue that Escue has failed to plead sufficient facts to state a claim against them under the federal securities laws.  Section 10(b) prohibits any person from making "fraudulent, material misstatements or omissions in connection with the sale or purchase of a security."  Morse v. McWhorter, 290 F.3d 795, 798 (6th Cir. 2002); 15 U.S.C. §78j(b); 17 C.F.R. §240.10b-5(b).  To state a claim under Section 10(b) and Rule 10b-5(b), a plaintiff must allege, in connection with the purchase or sale of securities: (1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) justifiably relied on by plaintiffs, and (5) proximately causing them injury.  Frank v. Dana Corp., 547 F.3d

16

564, 569 (6th Cir. 2008).

"Misrepresented or omitted facts are material only if a reasonable investor would have viewed the misrepresentation or omission as 'having significantly altered the total mix of information made available.'" In re Sofamor Danek Group, Inc., 123 F.3d 394, 400 (6th Cir. 1997)(quoting Basic Inc. v. Levinson, 485 U.S. 224, 232 (1988)). Before liability for non-disclosure can attach, the defendant must have violated an affirmative duty of disclosure; materiality alone is not sufficient to place a company under a duty of disclosure. In re Sofamor, 123 F.3d at 400. However, a duty to affirmatively disclose may arise when there is an inaccurate, incomplete or misleading prior disclosure. City of Monroe Employees Retirement System v. Bridgestone Corp., 399 F.3d 651, 669 (6th Cir. 2005). "When a company chooses to speak, it must 'provide complete and non-misleading information.'" Indiana State District Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc., 583 F.3d 935, 943 (6th Cir. 2009) (quoting Rubin v. Schottenstein, Zox & Dunn, 143 F.3d 263, 268 (6th Cir. 1998)).

Fraud claims arising under §10(b) must satisfy the particularity pleading requirements of Rule 9(b). Id. at 569-70. In addition, the Private Securities Litigation Reform Act of 1995 ("PSLRA") "imposes additional and more '[e]xacting pleading requirements' for pleading scienter in a securities fraud case." Id. at 570 (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007)). Under the PSLRA's heightened pleading requirements, the complaint must:

> (1) ... specify each statement alleged to have been
> misleading, the reason or reasons why the statement is
> misleading, and, if an allegation regarding the statement

17

> or omission is made on information and belief, the
> complaint shall state with particularity all facts on
> which that belief is formed [and]
>
> (2) ... state with particularity facts giving rise to a
> strong inference that the defendant acted with the
> required state of mind.

15 U.S.C. §78u-4(b)(1), (2).  Thus, the PSLRA "requires plaintiffs
to state with particularity both the facts constituting the alleged
violation, and the facts evidencing scienter, i.e., the defendant's
intention 'to deceive, manipulate or defraud.'"  Tellabs, 551 U.S.
at 321 (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194
(1976)).  "To qualify as 'strong' ..., an inference of scienter
must be more than merely plausible or reasonable–it must be cogent
and at least as compelling as any opposing inference of
nonfraudulent intent."  Tellabs, 551 U.S. at 314; Konkol v.
Diebold, Inc., 590 F.3d 390, 396 (6th Cir. 2010).

In evaluating a motion to dismiss private securities claims
arising under §10(b), this court must accept all factual
allegations in the complaint as true.  Tellabs, 551 U.S. at 322.
This court must consider the complaint in its entirety, including
any other sources courts ordinarily examine when ruling on a Rule
12(b)(6) motion to dismiss, and determine "whether all of the facts
alleged, taken collectively, give rise to a strong inference of
scienter, not whether any individual allegation, scrutinized in
isolation, meets that standard."  Id. at 322-23 (emphasis in
original).  Finally, this court must take into account plausible
opposing inferences and assess any possible competing inferences
that could be drawn from the allegations, including "plausible
nonculpable explanations for the defendant's conduct, as well as
inferences favoring the plaintiff."  Id. at 323-24.

18

A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 324. "Thus, where two equally compelling inferences can be drawn, one demonstrating scienter and the other supporting a nonculpable explanation," ... the complaint should be permitted to move forward." Frank, 547 F.3d at 571. Although negligence alone on the part of a defendant cannot support a finding of scienter, recklessness is a sufficiently culpable state of mind. Konkol, 590 F.3d at 396. Recklessness is "'highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it.'" Id. (quoting Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1023 (6th Cir. 1979)).

The defendants argue that they were not involved in the merger negotiations and therefore made no direct statements to Escue during those negotiations. Escue argues in response that the defendants implicitly affirmed the contents of the merger agreement, including the accuracy of the representations and warranties contained therein, when they approved the merger. He argues that since the defendants effectively approved the representations made in the warranty agreement by authorizing the merger, a duty arose on the part of defendants to rectify any material misrepresentations or omissions.

Although high-level executives can be presumed to be aware of matters central to their business's operation, fraudulent intent cannot be inferred merely from the defendants' positions as directors and alleged access to information. PR Diamonds, Inc. v.

19

Chandler, 364 F.3d 671, 688 (6th Cir. 2004); see also City of
Monroe Employees Retirement System v. Bridgestone Corp., 399 F.3d
651, 690 (6t Cir. 2005)(complaint which pleaded little more than
corporate titles of defendant, dates of employment and attendance
at quarterly meetings insufficient to allege scienter).  The
complaint must allege specific facts or circumstances suggestive of
the defendants' knowledge.  Chandler, 364 F.3d at 688.  Likewise,
the fact that defendants as directors approved the merger agreement
may not, in itself, be sufficient to allege scienter for purposes
of the securities fraud claims.  Cf. Ley v. Visteon Corp., 543 F.3d
801, 812 (6th Cir. 2008)(fact that chief executive officer and
chief financial officer signed Sarbanes-Oxley certification of
accuracy for periodic financial reports required under 18 U.S.C.
§1350 is only probative of scienter if the person signing the
certification was severely reckless in certifying the accuracy of
the financial statements).

     In this case, Escue has alleged more than the mere titles of
the defendants and their signing a resolution approving the
adoption of the merger agreement.  Escue alleges that the
defendants had actual knowledge that the DOL was conducting a
criminal investigation of Sequent activities by virtue of having
direct contact with the DOL and understood the significance of that
investigation by virtue of that contact and discussions with legal
counsel for Sequent.  Doc. 19, ¶ 136.  He also alleges that the
defendants had specific and actual knowledge of Sequent's practice
of inflating premiums charged to clients for vision, dental and
COBRA insurance coverage.  Doc. 19, ¶ 138.

     As discussed above, Escue has also alleged that defendants
were involved in approving loans to themselves from Sequent and

illegally causing the Trust to pay cash to ABL to cover the purchase, that they caused ABL to charge excessive fees for the services it provided to the Trust, and that they approved Sequent's illegal practice of charging inflated insurance premiums.  Doc. 19, ¶¶ 21-28 31, 35-41.  Escue also alleges that the defendants, whose numbers included an experienced corporate attorney and multiple certified public accounts, knew, or should have known, that the financial statements provided to the independent valuation expert were fraudulent and misleading.  Doc. 19, ¶ 88.  Sequent is a private, closely held corporation, and Escue, Hutter, and the other individual defendants are Sequent's only shareholders.  Doc. 19, ¶ 11.

Accepting all factual allegations in the complaint as true and considering the complaint in its entirety, the court concludes that the facts alleged, taken collectively, give rise to a strong inference of scienter.  The first amended complaint contains factual allegations sufficient to allege that the defendants had knowledge of Sequent's business practices, which, acting as directors, they caused Sequent to adopt, and of the DOL criminal investigation, and that they knew or should have known that the representations and warranties made in the merger agreement approved by their action and the omissions therefrom were false and misleading.  While it is plausible to infer from the complaint that the defendants may not have been aware of some of the matters alleged therein, such as the details of the in person merger negotiations engaged in between Escue and Hutter, the inferences of fraudulent and reckless conduct on the part of defendants which favor Escue are at least as cogent and compelling, or even more plausible, than any inferences favoring the defendants.  There are

sufficient allegations supporting scienter, as well as the other elements of a federal security law claim, to permit the Fifth and Sixth Claims to proceed to discovery.

<u>B. Statute of Limitations</u>

Defendants also argue that the federal securities law claims are barred by the statute of limitations.  Prior to the passage of the Sarbanes-Oxley Act in 2002, parties asserting violations of §10(b) and Rule 10b-5 were required to file suit within one year after the discovery of the facts constituting the violation.  15 U.S.C. §78i(e); <u>Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson</u>, 501 U.S. 350, 364 (1991).  However, the Sarbanes-Oxley Act extended the statute of limitations for actions filed after July 30, 2002, which allege securities law violations which were not already time-barred prior to that date, to two years after the discovery of the facts constituting the violation or five years after the violation, whichever occurs earlier.  <u>Greenburg v. Hiner</u>, 359 F.Supp.2d 675, 681 (N.D.Ohio 2005); 28 U.S.C. §1658(b).

Escue alleges in the first amended complaint that he had no notice of the pending DOL criminal investigation until a board of directors meeting held on September 24, 2007.  Doc. 19, ¶ 91.  The original complaint in this case was filed on September 2, 2009, within two years of the date when Escue was first placed on notice of the criminal investigation.  Escue also alleges that he learned at a board of directors meeting in June of 2009 that Hutter's previous representation concerning Sequent's tiering practices being approved by an outside ERISA expert were false when Hutter proposed that Sequent obtain an outside expert opinion on that issue.  Doc. 19, ¶ 47.  Thus, the federal securities law claims were based on facts which were discovered within two years of the

filing of the complaint, and the motion to dismiss based on the statute of limitations is not well taken.

IV. Seventh Claim - Ohio Rev. Code §1701.93

In the Seventh Claim, Escue asserts a claim against Hutter and the other individual defendants under Ohio Rev. Code §1701.93(A)(1). That section provides:

(A) No officer, director, employee, or agent of a corporation shall, either alone or with another or others, with intent to deceive:

(1) Make, issue, deliver, publish, or send by mail or by any other means of communication any prospectus, report, circular, certificate, statement, balance sheet, exhibit, or document, respecting the shares, assets, liabilities, capital, business, dividends or distributions, earnings, or accounts of a corporation, that is false in any material respect, knowing the statement to be false[.]

§1701.93(A)(1). Ohio Rev. Code §1707.93(B) states:

(B) Whoever violates this section shall be personally liable, jointly and severally, with all other persons participating with the offender in any act of that type, to any person for any damage actually suffered and proximately resulting from the act.

§1701.93(B).

Defendants argue that there are no allegations in the complaint that they delivered any statement, document or report to Escue. However, the statute does not require that the director or officer personally deliver the document to another person. Rather, it applies to an officer or director acting "either alone or with another or others[.]" §1701.93(A). Escue has alleged that the defendants approved Sequent financial statements at board of directors meetings, knowing or having reason to know that the financial statements were fraudulent and misleading because of their failure to take into account Sequent's illegal business

23

practices or to disclose that Sequent was the subject of a DOL criminal investigation. Doc. 19, ¶¶ 87-89. Escue alleges that Sequent provided fraudulent financial statements to the valuation expert for use in evaluating the proposed merger. Doc. 19, ¶¶ 86, 89.

Escue also alleges that in December of 2006, Sequent and Escue, through counsel, exchanged drafts of the merger agreement, in which Sequent represented that the statements in Article VI and its associated schedules "are correct and complete as of the date of this Agreement and will be correct and complete immediately prior to the" effective date of January 1, 2007. Doc. 19, ¶¶ 65-66. Escue alleges that §6.06 of the merger agreement contained statements indicating that Sequent's financial statements accurately reflected Sequent's assets and liabilities. Doc. 19, ¶ 67. Escue alleges that Hutter and the other directors signed a corporate resolution approving the merger agreement, thereby affirming the accuracy of the contents of the merger agreement, and that he relied on the defendants' approval of the merger agreement in agreeing to the merger. Doc. 19, ¶¶ 71-72, 78-79. Escue alleges that approval of the merger by the defendant directors was a mandatory closing condition of the merger. Doc. 19, ¶ 69. Therefore, the final merger agreement would never have been delivered to Escue for his signature if the defendants had not approved the merger.

The allegations in the first amended complaint are sufficient to allege that the defendants, acting together with Hutter and Sequent's counsel, took actions which contributed to the false and misleading financial statements and merger document being delivered to others, and that they acted with the intent to deceive and with

knowledge of the falsity of information contained in those documents.  The motion to dismiss the Seventh Claim is denied.

## V. Ninth and Tenth Claims - Ohio Rev. Code §§ 1707.44 and 1707.43

Escue alleges that the defendants violated Ohio Rev. Code §1707.44 in the issuance of Sequent shares to him under the merger agreement.  In his Ninth Claim, he seeks the remedy of rescission under Ohio Rev. Code §1707.43, and in his Tenth Claim, he seeks damages as an alternative remedy.

Section 1707.44 provides in relevant part:

(B) No person shall knowingly make or cause to be made any false representation concerning a material and relevant fact, in any oral statement or in any prospectus, circular, description, application, or written statement, for any of the following purposes:

* * *

(4) Selling any securities in this state;

* * *

(J) No person, with purpose to deceive, shall make, issue, publish, or cause to be made, issued, or published any statement or advertisement as to the value of securities, or as to alleged facts affecting the value of securities, or as to the financial condition of any issuer of securities, when the person knows that the statement or advertisement is false in any material respect.

* * *

(N) No person knowingly shall influence, coerce, manipulate, or mislead any person engaged in the preparation, compilation, review, or audit of financial statements to be used in the purchase or sale of securities for the purpose of rendering the financial statements materially misleading.

§1707.44(B)(4), (J) and (N).

Sections 1707.44(B)(4) and 1707.44(J) prohibit only

25

affirmative misrepresentation; they do not apply to fraudulent nondisclosure or the omission of material facts. State v. Warner, 55 Ohio St.3d 31, 38, 564 N.E.2d 18 (1990). For purposes of §§1707.44(B)(4) and (J), a person acts "knowingly" if he represents facts to be different than he should have known them to be if he had exercised reasonable diligence to ascertain the facts. Id., 55 Ohio St.3d at 42-43.

With respect to §1707.44(B)(4), the first amended complaint alleges that the defendants caused false statements to be made in written documents, namely, the Sequent financial statements and the merger agreement, by approving of the financial statements at the board of directors meetings and by the resolution authorizing Sequent to enter into the merger agreement. The defendants arguably "caused" the false statements to be made because absent the resolution approving the merger, the final agreement would not have been submitted to Escue for signature and the merger would not have occurred. While some of the allegations in the complaint concern omissions, for example, the failure to mention the pending DOL criminal investigation, the complaint also alleges that affirmative misrepresentations were made. For example, it is alleged that the merger agreement contained representations and warranties that the agreement and financial statements accurately reflected Sequent's worth and liabilities, when in fact those statements were allegedly false. Doc. 19, ¶ 67. The allegations in the complaint include facts sufficient to plead that the defendants, at the very least, acted knowingly by representing facts to be different than they should have known them to be if they had exercised reasonable diligence to ascertain the facts. These allegations apply as well to the defendants' liability under

26

§1707.44(J).

There are no Ohio cases which have construed the language of §1707.44(N). This section prohibits any person from influencing, coercing, manipulating or misleading anyone engaged in the preparation, compilation, review or audit of financial statements to be used in the purchase or sale of securities. It was clearly intended to apply to a situation where the person gives false information to the individual who is preparing or reviewing the financial statements. It is less clear that it was intended to apply here, where the only allegations are that the defendant directors approved allegedly false financial statements at the board of directors meetings which were then provided by Sequent to the valuation expert, _i.e._, where the "misleading" was achieved through providing false or incomplete financial statements for review. However, Ohio courts have indicated that the Ohio securities laws are to be liberally construed. See In re Columbus Skyline Securities, 74 Ohio St.3d 495, 498, 660 N.E.2d 427 (1996); Federated Management Co. v. Coopers & Lybrand, 137 Ohio App.3d 366, 392, 738 N.E.2d 842 (2000). The court will therefore deny the motion to dismiss the §1707.44(N) theory at the pleading stage.

Section 1707.43(A) provides:

(A) Subject to divisions (B) and (C) of this section, every sale or contract for sale made in violation of Chapter 1707. of the Revised code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person that has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by the purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect

the protection contemplated by the violated provision. §1707.43(A).

The language "participated in or aided the seller in any way" is broad in scope and extends beyond the actual seller and issuer of the security.  Federated Management, 137 Ohio App.3d at 391. Section 1707.43 does not require that a person induce a purchaser to invest in order to be held liable.  Id.  This statute does not contain a scienter requirement.  In re National Century Financial Enterprises, Inc., Investment Litigation, 580 F.Supp.2d 630, 650 (S.D.Ohio 2008).  In this case, the allegation that the defendants, acting as directors of Sequent, approved the merger agreement, which was a precondition for the merger going forward, is sufficient to allege that the defendants "participated in or aided the seller in any way" for purposes of liability under §1707.43(A).

The defendants' motion to dismiss the Ninth and Tenth Claims will be denied.

VI. Motion to Dismiss Third and Fourth Counterclaims

A. Third Counterclaim - Tortious Interference with Contractual Relationships

Escue has moved to dismiss Sequent's Third Counterclaim for tortious interference with contractual relationships.  The elements of a claim for tortious interference with contract under Ohio law are: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) resulting damages.  Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415, 650 N.E.2d 863 (1995).

Only improper interference with a contract is actionable. Fred Siegel Co., L.P.A. v. Arter & Hadden, 85 Ohio St.3d 171, 176,

28

707 N.E.2d 853 (1999).  In determining whether an actor has acted improperly in intentionally interfering with a contract, consideration should be given to: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interest sought to be advanced by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relations between the parties. Id. at 178-179.

Sequent alleges that Escue deliberately published "certain false statements contained in the complaint (and now, the first amended complaint) to customers of Sequent[.]"  Answer, ¶ 212. Sequent alleges that as a direct result of Escue's conduct, several customers have terminated their contractual agreements with Sequent.  Answer, ¶ 215.

Escue notes that privilege defenses applicable under defamation law also apply to claims for tortious interference with contract.  See Mawaldi v. St. Elizabeth Health Center, 381 F.Supp.2d 675, 690 (N.D.Ohio 2005)(where a claim such as tortious interference with contract is based on statements that are qualifiedly privileged under defamation law, the protection afforded those statements also apply to the derivative claim."). Escue argues that the alleged conduct of publishing statements contained in his amended complaint is protected by the absolute privilege accorded statements made in a judicial proceeding.

Under Ohio law, "a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable

relation to the judicial proceeding in which it appears." <u>Surace v. Wuliger</u>, 25 Ohio St.3d 229, 942-43, 495 N.E.2d 939 (1986). Statements made in a written pleading or brief, or in an oral statement to a judge or jury, are absolutely privileged if they have some reasonable relation to the judicial proceeding. <u>Michaels v. Berliner</u>, 119 Ohio App.3d 82, 87, 694 N.E.2d 519 (1997).

The privilege has also been extended, with strict limitations, to extrajudicial communications, including communications between attorneys. <u>Morrison v. Gugle</u>, 142 Ohio App.3d 244, 259, 755 N.E.2d 404 (2001). In order for an extrajudicial communication to fall within the scope of the absolute privilege, it must be: (1) made in the regular course of preparing for and conducting a proceeding that is contemplated in good faith and under serious consideration; (2) pertinent to the relief sought; and (3) published only to those directly interested in the proceeding. <u>Id.</u> at 260. Thus, the privilege "does not give a person <u>carte</u> <u>blanche</u> to defame another on the mere condition that a judicial proceeding is mentioned in, or somehow connected to, the defamatory statement." <u>Michaels</u>, 119 Ohio App.3d at 87-88. Escue's alleged act of publishing statements contained in his complaint to Sequent's customers constitutes an extrajudicial communication which does not appear to meet the criteria for the privilege applicable to statements made in a judicial proceeding.

The alleged conduct may be otherwise privileged. A qualified privilege is recognized where the publication is fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned. <u>Hahn v. Kotten</u>, 43 Ohio St.2d 237, 244, 331 N.E.2d 713 (1975). "A qualified privilege is

recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it[,] particularly "in the case of those who have entered upon or are considering business dealings with one another." Id. However, whether the claim of tortious interference would be barred by a qualified privilege in the instant case cannot be determined from the pleadings.

Escue also argues that the claim should not survive a motion to dismiss under Rule 12(b)(6) because it is implausible that he would publish false statements to Sequent's clients in light of the fact that he is a substantial shareholder of Sequent and has an interest in Sequent maintaining its customers and operating a successful and profitable business. Sequent alleges that Escue did so "in order to seek leverage to support his demand that the merger transaction be unwound on his terms." Answer, ¶ 212. It is not implausible that Escue would share his concerns about Sequent with his customers in Alabama to gain their support and sympathy in his efforts to regain control of BBSA. However, the court does find that the counterclaim fails to allege sufficient facts to place Escue on notice as to the nature of the claim against him. A complaint must give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. Here, the counterclaim simply alleges that Escue "published certain false statements contained in the complaint ... to customers of Sequent." It fails to notify Escue, even in general terms, of the nature of the statements which were allegedly made, or the persons or businesses to whom they were made. The allegations do not permit the court to infer more than the mere possibility of misconduct. On this ground, Escue's motion to

31

dismiss the Third Counterclaim is well taken.

## B. Fourth Counterclaim - Breach of Contract

Sequent alleges in its Fourth Counterclaim that Escue breached his obligations under his employment agreement with Sequent. To prove a breach of contract claim under Ohio law, a plaintiff must show the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. Nilavar v. Osborn, 137 Ohio App.3d 469, 483, 738 N.E.2d 1271 (2000).

The Fourth Counterclaim simply alleges in general terms that "Plaintiff's conduct was in breach of his obligations under his written Employment Agreement." Answer, ¶ 217. It does not specify the nature of Escue's conduct, nor does it allege which provisions of the agreement were breached. The Fourth Counterclaim incorporates all of the preceding paragraphs of the answer. However, Sequent's denials of the allegations in Escue's first amended complaint cannot serve as affirmative allegations of fact for purposes of a counterclaim. Although Sequent filed a copy of the employment agreement with the record, and although the other counterclaims contain additional allegations concerning Escue's conduct, those paragraphs do not specify which, if any, of Escue's alleged acts relate to the employment agreement. In addition, Escue correctly notes that Sequent has failed to plead, even in general terms, that it performed all of its obligations under the employment agreement. The Fourth Counterclaim fails to allege sufficient facts to state a claim for breach of contract under Ohio law, and this branch of Escue's motion to dismiss is granted.

## VII. Conclusion

In accordance with the foregoing, this court finds that the

32

first amended complaint contains allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory, which are sufficient to state a claim to relief that is plausible on its face.  The motion to dismiss the Third through Seventh, Ninth and Tenth Claims for Relief filed by defendants Schoonover, Boyer, Gettman, Kerber and Ewers is denied.  The motion to dismiss the Third and Fourth Counterclaims filed by Escue is granted.

Date: August 24, 2010           _____s/James L. Graham_____
                                James L. Graham
                                United States District Judge