IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Michael R. Escue,                           :

                  Plaintiff             :        Civil Action 2:09-cv-765

    v.                                      :        Judge Graham

Sequent, Inc., *et al.*,                     :        Magistrate Judge Abel

             Defendants           :

## Order

This matter is before the Magistrate Judge on plaintiff Michael R. Escue's October 25, 2011 motion to compel production of documents and deposition responses and for costs (doc. 116) and defendants' November 15, 2011 motions in limine concerning communications subject to attorney-client privilege and for return of privileged materials in plaintiff's possession and written and oral statements made in the course of plea discussions with the United States government that did not lead to a plea of guilty pursuant to Evidence Rules 401, 402, and 410 (doc. 129).

### I.     Background

This is a suit for recision of a December 20, 2006 Merger Agreement that merged two professional employee organizations ("POE"s): Better Business Solutions of Alabama, Inc. ("BBSA") and Sequent, Inc. The POE leases employees to companies that

outsource some functions, primarily human resources. Sequent also assumes the risks

of certain potential liabilities, such as workers' compensation.

The complaint makes the following allegations. Plaintiff Michael R. Escue was

the 100% shareholder of BBSA. He exchanged his BBSA shares, valued at $1,871,630, for

shares of Sequent. Defendants concealed from Escue that Sequent had engaged in

unlawful transactions and was then the subject of an ongoing criminal investigation,

that it derived income from illegal loans, illegally inflated insurance premiums, and had

illegal business practices, and that defendants misrepresented the value of Sequent by

failing to properly reflect liabilities for ERISA violations and other criminal and civil

law violations.

## II.  Arguments of the Parties

### A  Plaintiff

Plaintiff argues that defendants have withheld documents, obstructed the

production of documents by third parties, and denied him the opportunity for

deposition examination of multiple witnesses based on unfounded claims of attorney

client privilege. Escue maintains that the information that he seeks to discover cannot be

shielded from him because following the merger he became a Sequent director and

remained so until he resigned upon his filing this lawsuit. Furthermore, he remains a

shareholder of Sequent, a close corporation under Ohio law.

In the alternative, Escue maintains that even if the attorney client privilege was

applicable, the privilege has been waived. Sequent made numerous disclosures of

2

information it now claims is privileged, and some of those disclosures were false and intended to conceal the truth about the criminal investigation, thereby advancing the fraud upon which this lawsuit is based. Escue maintains that Sequent has invoked the privilege in an effort to shield the truth about its false disclosures. According to Escue, during the course of the criminal investigation, Sequent made multiple detailed, but misleading, disclosures to the Government. Sequent also misled two of its auditors to avoid disclosure of the criminal investigation in audited financial statements. Sequent also provided misleading information to its counsel, which led its counsel to provide misleading information to its auditor.

Sequent and its counsel disclosed confidential information to Escue after he became a shareholder and a director of Sequent. Disclosures were made to Escue even after he had given Sequent notice of his adverse claim. Escue further argues that Sequent's in-house counsel ratified earlier disclosures to Escue by participating in a conference call with Escue and his counsel. During the conference call, Sequent's in-house and outside counsel made additional disclosures of otherwise confidential information.

Escue specifically seeks either documents or the opportunity to depose individuals concerning three topics.

Nicholas Ferrigno, Jr. and John West's October 27, 2006 disclosure to auditor. Shortly after Sequent was notified that it was the subject of a criminal investigation it retained Nicholas Ferrigno, Jr. and John West to represent it in the criminal matter. On

October 27, 2006, Ferrigno responded to a request from Sequent's auditor concerning the 2006 financial statement. Ferrigno informed the auditor of the civil and criminal investigation, but he stated that he was unable to determine what the outcome would be. Ferrigno also stated that he was aware that a prohibited transaction may have occurred, but the transaction had been "inadvertent" and "the result of administrative error." Doc. 116-4. Escue asserts that relying, in part, on that communication, the auditor decided that disclosure of the investigation in Sequent's 2006 financial statement was not required. Escue argues that the Ferrigno's statement could only have been made on the basis of false information provided to him by Sequent. Escue maintains that it is likely that whatever false information was told to Ferrigno about the facts underlying the criminal investigation would be in the notes, memoranda, correspondence, and drafts in the law firm's files.

Sequent's Disclosures to Escue. Plaintiff maintains that Sequent improperly refused to let plaintiff question Mike Schoonover concerning his April 4, 2008 email and Steve Kerber concerning his December 23, 2008 email.

Escue also seeks to examine witnesses concerning the December 5, 2008 meeting with federal investigators and the December 18, 2008 memorandum drafted by Darrell Hughes, in-house counsel for Sequent, concerning that meeting.

Following a December 18, 2008 Sequent board of directors meeting, Escue and his attorneys participated in a telephone call with West, one of Sequent's criminal defense attorneys, in which West explained the seriousness of the underlying facts of

the criminal investigation and the possible outcomes. Escue's attorneys, Skylar and Fitch, took notes. On February 9, 2009, a second telephone conference took place in which Hughes, Sequent's in-house counsel, also participated. Escue maintains Hughes disclosed confidential information to Escue, Skylar, and Fitch. Escue maintains that West was improperly instructed not to answer any deposition questions concerning the conference call.

       <u>Disclosures to the U.S. Department of Labor</u>. On April 27, 2006, Sequent provided the Department of Labor with its version of the facts underlying the criminal investigation. During his deposition, Hughes refused to testify regarding what Greg Miller had said about Hutter's knowledge and authorization of the transfer of funds, why Miller had approached him, and what Miller told the government concerning the issue. Hughes also refused to discuss the basis for his assertion that there had been no discussions by members concerning taking funds from the Trust.

       **B.**    **Defendants**

       Defendants maintain that plaintiff omitted relevant information concerning the course of discovery. Although plaintiff alleges that defendants concealed the fact that the Department of Labor had begun a criminal investigation, this fact was provided to plaintiff and his counsel prior to the merger in due diligence materials. Plaintiff and the attorney who represented him in the due diligence process prior to the merger acknowledged in their depositions that they had received written disclosure of the

criminal investigation. Following the deposition of plaintiff's counsel in the due diligence process, plaintiff shifted his focus to the audited financial statement.

Defendants maintain that all of the documents Sequent provided to the government during the criminal investigation, totaling more than 30,000 pages, were also provided to plaintiff. No witness refused to answer questions concerning any factual matter investigated by the Department of Labor unless their only source of their knowledge was based on communications with counsel. Defendants further contend that no documents were withheld on grounds of privilege merely because counsel may have reviewed them.

Defendants also argue that two categories of privileged documents concerning the Department of Labor investigation are in plaintiff's possession. The first category of documents are documents that were inadvertently disclosed during the documentary discovery phase. Counsel for defendants learned that these documents had been inadvertently produced when plaintiff's counsel sought to question witnesses about them at deposition. Defense counsel objected at the depositions. Following the depositions, defense counsel, following the procedure outlined in the April 23, 2010 Agreed Protective Order, sent written notice requesting that the documents be returned. Plaintiff did not respond to defendant's claw-back letter, and a second demand was made, for which there has also been no reply.

The second category of privileged materials in plaintiff's possession are materials that plaintiff acquired while he was a member of Sequent's Board of Directors. As a

member of the Board, Escue was privy to advice given by counsel concerning the Department of Labor investigation. The materials include both documents and audio recordings of Board meetings that plaintiff surreptitiously made when counsel advised the Board or when confidential discussions concerning counsel's advice occurred. The protective order does not apply to the second category of documents because they were not obtained in discovery.

Defendants argue that plaintiff does not enjoy a privilege in the materials he seeks to discovery and rely on cases finding that federal courts have rejected the notion that a former director or officer, even if previously vested with the power to exercise the privilege while a corporate officer, may subsequently claim any authority to exercise or waive the privilege at all.

Sequent maintains that it has not waived its privilege. The conference call between Escue, John West, and Escue's personal attorney did not result in a waiver of the privilege because West had no authority to waive the privilege. West testified that he believed was speaking to Escue in his capacity as a board member and not as a potential adversary who was collecting information to use against Sequent. Defendants maintain that no privileged matters were discussed in the second telephone call, so there could be no waiver.

Sequent also argues that its counsel did not waive the privilege by communicating non-privileged information that they were required to disclose to Sequent's outside auditors and the government. Plaintiff does not specify what parts of

7

the memorandum constitute privileged communications. Sequent maintains that in the Sixth Circuit, a corporation's voluntary disclosure of facts amounts to a waiver of the privilege only with respect to the facts actually disclosed. Sequent further argues that plaintiff Escue's argument that he was misled by the audited financial statement failing to include the DOL criminal investigation is meritless in light of the May 4, 2006 letter to him disclosing that pending investigation. Defendant's November 15, 2011 Memorandum Contra, doc. 129-1, Ex. 2, PAGEID ## 2457-58.

Defendants move for an order in limine directing plaintiff not to allude to or seek to use the privileged materials or any testimony concerning them at trial. Sequent also seeks the return of its privileged materials. Plaintiff is not entitled to retain these materials merely because he enjoyed lawful access to them when he was a director. Defendants further argue that plaintiff was not acting consistent with his fiduciary duty as a director to act in good faith in the interest of the corporation when he exploited his access as a director to make unauthorized tape recordings of privileged communications in anticipation of using them to the corporation's detriment.

Defendants contend that Sequent's plea discussions and the deferred prosecution agreement with the Department of Labor should not be alluded to in opening statement or introduced into evidence. Defendants maintain that they are not admissible and are simply irrelevant to this case.

### III.    Discussion

The purpose of the attorney-client privilege is to encourage clients to communicate freely and completely with their attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Fisher v. United States*, 425 U.S. 391, 403 (1975). The privilege also serves the purpose of promoting "broader public interests in the observance of law and administration of justice." 449 U.S. at 389. The privilege, however, is not absolute. It applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice. 425 U.S. at 403.

### A.    Plaintiff's Motion to Compel

Plaintiff argues that no attorney-client privilege can be asserted between him, Sequent and the other directors with respect to the subject matter of the government's civil and criminal investigations because Escue was an owner and director of Sequent, a close corporation. Plaintiff relies on *Kirby v. Kirby*, 1987 WL 14862 (Del. Ch. Jul. 29, 1987). In *Kirby*, a dispute arose among four siblings concerning the control of a charitable corporation. The question before the court was whether the attorney-client privilege could properly be invoked by the corporation against those who were directors at the time the documents were prepared. The *Kirby* Court held that the privilege could not be invoked under those circumstances. The *Kirby* decision was followed in *Gottlieb v. Wiles,* 143 F.R.D. 241, 247 (D. Colo. 1992).

Other courts, however, have rejected the holding in *Kirby*. In *Fitzpatrick v. American International Group, Inc.*, 272 F.R.D. 100 (S.D.N.Y. 2010), the court rejected the

9

rule outlined in *Kirby.* Instead, the court relied upon several well recognized principles of corporate privilege. First, the attorney-client privilege belongs to the corporation. *Id.* at 107. Second, a corporation's decisions and communications are made by its chosen representatives, either its board or senior officers. *Id.* Third, although board members or senior officers make decisions that are binding on the corporation, they do so in their corporate capacities rather than as non-corporate individuals. *Id.* Because they are acting in that capacity as a fiduciary, they are bound to pursue the best interests of the corporation rather than their own personal interests. *Id.* The *Fitzpatrick* Court believed that the *Kirby* decision conflated the role and authority of the directors acting in the corporate capacity with that of their individual capacity. The *Fitzpatrick* Court concluded that a former officer or director retains no control over a corporation's attorney-client privilege. *Id.* at 108.

I find the holding in *Fitzpatrick* to be persuasive. Consequently, Sequent can assert the attorney-client privilege with respect to Escue even though he formerly had access to the information as an owner and director of Sequent. Escue was privy to the privileged information in his capacity as a corporate representative. As he no longer acts on behalf of Escue as an owner or director, he can no longer exercise or waive the privilege on behalf of the corporation.

Plaintiff's reliance on *Crosby v. Beam*, 77 Ohio St. 3d 105 (1989) is also misplaced. In *Crosby*, the Ohio Supreme Court held that where majority shareholders in a close corporation breach their heightened fiduciary duty to minority shareholders, a direct

action rather than a shareholder's derivative action was actionable based on the fact that close corporations bear a striking resemblance to a partnership. Simply because there are similarities between a close corporation and a partnership that help determine what cause of action minority shareholders may pursue, it does not follow that the attorney-client privilege cannot be asserted by a closed corporation against a former director simply because that is the rule that applies to partners in a partnership. As the *Fitzpatrick* court explained, the attorney-client privilege belongs to the corporation, and a director of a corporation invokes or waive the privilege in his corporate, not his individual capacity.

Plaintiff further argues that the duty to disclose that arose in negotiating a merger between BBSA and Sequent waived Sequent's attorney-client privilege. Plaintiff maintains that defendants intended to waive the privilege by proceeding with the acquisition of BBSA. Plaintiff provides no case law to support his position that the act of seeking a merger with BBSA necessarily entailed Sequent waiving the attorney-client privilege. While the merger talks necessitated Sequent providing Escue with information about the corporation, including information about the DOL investigation, those talks did not legally require Sequent to provide that information by waiving its attorney-client privilege for documents related to that investigation.

<u>Mike Schoonover's April 4, 2008 email and Steve Kerber's December 23, 2008 email.</u> Mr. Schoonover's email to the board members included a carbon copy to the attorneys representing both Sequent and Bill Hutter. The email clearly seeks the advice

of counsel. The email, however, was not directed solely to Sequent's attorney. Presumably, the attorneys for Bill Hutter, Gregory Vivani, David Winters, and David W. Alexander, did not also represent Sequent. The attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties. *In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir.1996). Because this email was also sent to Gregory Vivani, David Winters, and David W. Alexander, this email does not constitute a privileged communication.

Steven Kerber sent a carbon copy of his December 23, 2008 email to Darrell Hughes. Including in-house counsel on an email, however, does not necessarily result in the document being a privileged communication. Here, the email message does not seek the legal advice of counsel. Rather, the document concerns the Board's management of the company and the need for a plan for going forward. Even tho the email may have been precipitated by the DOL investigation, the message concerns the board's past potential failings and the need for improvement rather than legal strategy or a request for legal advice. The email is clearly directed to the other board members. It was for the purpose of making business decision. The inclusion of Hughes among the recipients does not turn it into a communication seeking legal advice.

Plaintiff's motion to compel is GRANTED with respect to these two email messages.

Telephone Conference Calls in which Plaintiff's Attorneys Participated. Plaintiff further argues that even if the attorney-client privilege previously applied, the privilege

12

was subsequently waived by the acts of Hutter and Sequent's in-house counsel by participating in two telephone calls with Escue and his personal attorneys. Plaintiff contends that during the telephone calls, John West, Sequent's criminal defense counsel, discussed the specifics of the criminal investigation that Sequent now claims is privileged. Darrell Hughes, in-house counsel for Sequent, authorized the first call and participated in the second. Defendants maintain, however, that no waiver occurred.

With respect to the first telephone call, Sequent maintains that attorney John West had no authority to waive the privilege, so no waiver could have occurred. West testified that he believed he was speaking to Escue in his capacity as a board member. West had offered to speak with the board of directors concerning the investigation, and he reasonably believed that Escue contacted him to speak to him in his capacity as a board member, not as adversary. Additionally, at the time the telephone conference was scheduled, West was not aware that Escue's attorneys would also be participating in the telephone call.

The fact that West was not aware that Escue's attorneys would be participating, however, is irrelevant. Once West learned that Escue's attorneys were also on the line, West should have known that his conversation with Escue would not constitute privileged communications. The presence of another individual on the telephone call meant that the conversation was not privileged even if West believed that he was speaking to Escue in his capacity as a board member. As previously noted, the attorney-client privilege is waived by voluntary disclosure of private communications

13

by an individual or corporation to third parties. *In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir.1996).

Although West did not have the authority to waive the privilege on behalf of Sequent, it appears that West may have disclosed confidential information to Escue's personal attorneys. A client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure. *U.S. v. Dakota,* 197 F.3d 821, 825 (6th. Cir. 1999) (citing *In re von Bulow*, 828 F.2d 94, 104 (2d Cir.1987)). Escue maintains Hughes' failure to take any action in response to the first telephone call ratified the waiver of privileged information that was discussed in the first telephone call. Escue relies on *Business Integration Services, Inc., v. AT&T Corp.*, 251 F.R.D. 121 (2008), which held that AT&T had waived its attorney-client privilege by ratifying its employee's disclosure of the in-house counsel's thought processes and legal opinions to plaintiff prior to litigation. Applying the general principles of agency, the court found that AT&T's failure to respond in any way to the allegedly unauthorized disclosure justified the reasonable assumption that AT&T assented to the disclosure. The court stated:

> This is a case where a reasonable holder of a privilege, confronted with an unauthorized disclosure of privileged information, would have expressed dissent to that disclosure (and would have taken steps to limit its consequences). Failure to do so within a reasonable time frame may be construed as ratification. This is all the more so when, as in this case, the disclosure was made at a time when the potential for a contentious situation was clearly already present and the disclosure was quickly brought to the attention of persons within AT&T who should have appreciated its significance.
> . . .

14

> Because safeguarding the corporation's legal privilege is a task that is
> paradigmatically within the scope of responsibilities of the in-house
> counsel, we find that actions (or lack thereof) with regard to that legal
> privilege by the in-house counsel who was also involved in the
> discussions with BIS about termination, may reasonably be imputed to the
> company in this case.

*Id.* at 128. Here, Sequent failed to act promptly to limit the consequences of West's

disclosure to plaintiff's personal attorneys. As a result, plaintiff's motion to compel is

granted with respect to questions posed to Mr. West during his deposition concerning

the January 13, 2009 telephone call. *See* doc. 109; West Dep. at 120:17-123:5.

With respect to the second call, Sequent maintains that no privileged matters

were discussed. According to Sequent, the only matters discussed in the second

telephone call concerned the January 21, 2009 meeting of Hutter, David Winters,

Hughes, and the prosecutor and DOL agents. Defendants maintain that what occurred

in the January 21, 2009 meeting is not privileged. As this was the only topic discussed in

the second telephone call, no waiver of the attorney-client privilege occurred.

Plaintiff's motion to compel is GRANTED with respect to the two telephone calls.

<u>Disclosures made to Outside Auditors</u>. The attorney-client privilege is not an

absolute privilege, and the purpose underlying the attorney-client privilege is

eviscerated when a client consults an attorney not for advice on past misconduct, but

for legal assistance in carrying out a contemplated or ongoing crime or fraud. *Clark v.

United States*, 289 U.S. 1, 15,(1933); *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032,

1038 (2d Cir.1984); *In re Murphy*, 560 F.2d 326, 337 (8th Cir.1977).

Plaintiff argues that he is entitled to receive communications between Hughes and Sequent's outside counsel based on the crime-fraud exception to the attorney-client privilege. On October 27, 2006, Mr. Ferrigno, writing on behalf of Greenbaum, Doll & McDonald, responded to a request from Hausser & Taylor, Sequent's auditor, for information relevant to the audit of Sequent's fiscal year 2006 financial statement. Plaintiff was provided this financial statement when the merger with Sequent was under his consideration. In his letter, Mr Ferrigno disclosed the existence of a civil and criminal investigation by the Department of Labor. He stated that he was unable to determine whether an adverse outcome was either probable or remote. He additionally wrote that he was aware that a prohibited transaction had occurred, which he described as "inadvertent" and "the result of administrative error." Pl.'s Exh. D. Escue argues that this characterization cannot be squared with the facts revealed in discovery and in the deferred prosecution agreement. Escue argues that the fraud exception to the attorney-client privilege allows him access to the files of Greenbaum, Doll & McDonald. Escue maintains that Mr. Ferrigno's statement was the result of Sequent providing false information to him in order to influence its auditor to not disclose Sequent's criminal conduct. According to plaintiff, Mr. Ferrigno unknowingly advanced Sequent's cover-up of the truth.

Here, plaintiff has not demonstrated the applicability of the crime-fraud exception.

16

> The crime-fraud exception has a precise focus: It applies only when the communications between the client and his lawyer further a crime, fraud or other misconduct. It does not suffice that the communications may be related to a crime. To subject the attorney-client communications to disclosure, they must actually have been made with an intent to further an unlawful act. *See In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir.1985); *accord In re Antitrust Grand Jury*, 805 F.2d 155, 168 (6th Cir. 1986); *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir.1986) (per curiam).

*U.S. v. White*, 887 F.2d 267, 271 (D.C. Cir.,1989). The Sixth Circuit requires the party asserting the applicability of the crime-fraud exception to "make a *prima facie* showing that a sufficiently serious crime or fraud occurred to defeat the privilege; second, [the moving party] must establish some relationship between the communication at issue and the *prima facie* violation. *In re Antitrust Grand Jury*, 805 F.2d 155, 164 (6th Cir. 1986). The Sixth Circuit adopted the Second Circuit's formulation of the *prima facie* standard, which requires that a prudent person have a reasonable basis to suspect the perpetration of a crime or fraud. *Id.* at 166. Plaintiff has not met his burden. Plaintiff's argument that Sequent's counsel intentionally downplayed the significance of the transfer to its outside auditors in order to fraudulently induce plaintiff to proceed with the merger is insufficient to set aside Sequent's attorney-client privilege given that plaintiff was provided with documents indicating that criminal investigation was underway and that an improper transaction had occurred.

Plaintiff's motion to compel the notes, memorandum correspondence, and drafts in Greenbaum, Doll & McDonald's files is DENIED.

<u>Disclosures made to the Government</u>. In October 2005, the Board of Directors for Sequent decided to sell certain shareholder notes to Accompany Benefits LLC ("Accompany Benefits").[1] After Sequent was advised that the Department of Labor was conducting a criminal investigation, Sequent initiated an internal audit and investigation. During the course of that investigation, Sequent's counsel, Mr. Hughes, learned from Greg Miller that funds were improperly transferred from Sequent's Welfare Benefit Trust to Accompany Benefits. The following day, Accompany Benefits transferred the funds to Sequent to pay for the outstanding balance on shareholder notes.

Defendants maintain that they were required by federal law to report the transactions to the Internal Revenue Service, and did so on Form 5330 in addition to paying an excise tax. Additionally, Mr. Hughes reported the transactions to the Department of Labor in a memorandum detailing what had occurred. In the memorandum, Mr. Hughes explained how he learned of the improper transaction and what steps Sequent took to correct it.

Although plaintiff contends that the memorandum waives Sequent's privilege with respect to all attorney-client communications regarding the criminal investigation because it discloses attorney-client privileged information, plaintiff fails to identify which parts of the memorandum he considers privileged communications. Although

---

[1]Accompany Benefits was formed by the shareholders of Sequent as full service insurance angency/brokerage firm to offer services to Sequent PEO clients and non-PEO clients.

Mr. Hughes states that he learned of the transaction from Greg Miller on February 27, 2006, he does not provide any details concerning what Miller said. At his deposition, Hughes refused to answer questions about what Miller told him on the basis that the communications were privileged. Here, the disclosures did not reveal any particulars concerning the advice provided by counsel. Rather, the memorandum contains a recitation of the facts counsel learned from the investigation. Furthermore, as defendants argue, plaintiff has been permitted to question witnesses with actual knowledge of the January 2006 transfer of funds.

Plaintiff's motion to compel with respect to the disclosures made to Government is DENIED.

### B. Defendants' Motion in Limine

Defendants maintain that plaintiff is in possession of privileged materials belonging to Sequent and seek an order directing plaintiff not to allude to or use these privileged materials or testimony concerning them at trial. Sequent also seeks the return of its privileged materials. The materials fall into four separate categories: (1) materials that were inadvertently produced by Sequent in discovery; (2) audio recordings of counsel speaking to the board of directors; (3) privileged documents obtained by plaintiff while he was a director that remain in his possession; and (4) plea discussions and the deferred prosecution agreement.

Materials Inadvertently Produced. Defendants seek the return Steven Kerber's December 23, 2008 email (Bates number SEQPST018852). As previously discussed, this

19

email message is not subject to the attorney-client privilege simply because Sequent's counsel received a copy of the message. The content of the message does not seek legal advice. Rather, the message concerns the business practices of the Board and the need to develop a plan for the future well-being of the company.

Defendants also seek the return of plaintiff's deposition exhibit 228, Mike Schoonover's April 4, 2008 email. This message was also sent to the attorneys representing Bill Hutter in his individual capacity. As a result, this is not a privileged communication because it was disclosed to third parties.

In his August 3, 2011 letter, Mr. Savage, counsel for defendants, also identifies plaintiff's exhibit 2 as being inadvertently produced by Sequent. I have been unable to locate this document. Without the document, I am unable to evaluate the merits of defendants' argument.  As a result, defendants' motion is DENIED without prejudice with respect to plaintiff's exhibit 2.

Defendants' motion seeking the return of these documents is DENIED.

Audio Recordings Surreptitiously Made by Plaintiff. Defendants argue that plaintiff was not acting consistent with his fiduciary duty to act in good faith as a director when he surreptitiously recorded Sequent's counsel speaking to the board of directors. Defendants have failed to provide sufficient information concerning the recordings from which I can make a ruling. Defendants' motion is DENIED without prejudice with respect to the recordings.

    <u>Materials Obtained by Plaintiff as a Director</u>. Defendants seek the return of two documents produced by Escue in discovery (Bates numbers 0002 and 05374) because they are subject to the attorney-client privilege. Defendants argue that plaintiff is not entitled to retain these materials even though he enjoyed lawful access to them while employed by Sequent. I have been unable to locate these documents in the exhibits provided. As a result, defendants' motion is DENIED with respect to these documents.

    <u>Plea Discussions and the Deferred Prosecution Agreement</u>. Rule 410(a)(4) of the Federal Rules of Evidence states:

> Prohibited Uses. In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
> . . .
> (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

Fed. R. Evid. 410(a)(4).

    Defendants argue that the statements made in the agreement and statements during the discussions leading up to the agreement are not admissible or relevant to this action. Defendants maintain that the plea discussions with the prosecutor occurred long after the merger that is the subject of this case took place. According to defendants, the plea discussions do not make "the existence of any fact that is of consequence to the determination of the action more or less probable that it would be without the evidence." Fed. R. Evid. 401. Defendants specifically rely on Rule 410(4) of the Federal Rules of Evidence which prohibits the admission in any civil case of "any statement

made in the course of plea discussions with an attorney for the prosecuting attorney that do not result in a plea of guilty or which result in a plea guilty later withdrawn."

Plaintiff relies on *U.S. v. Barrow*, 400 F.3d 109 (2nd Cir. 2005). In the *Barrow* case, the defendant had made a proffer during the course of unsuccessful plea negotiations. Unlike the deferred prosecution agreement in this case, the proffer contained a provision that conditionally waived the protections of Rule 410. The remaining cases relied upon by plaintiff, *Rezner v. Bayerische Hypo-Und Verinsbank,* AG, 630 F.3d 866 (9th cir. 2010), *Amerigas Propane, L.P. v.  BP Am., Inc.,* 691 F. Supp. 2d 844 (N.D. Ill. 2010), and *United States v. Organic Pastures Dairy Co.*, 708 F. Supp. 2d 1005 (E.D. Cal, 2010), did not examine the issue of admissibility of a deferred prosecution agreement in the context of Rule 410. In each of these cases, the deferred prosecution agreement was admitted, but no analysis or explanation was provided. As a result, these cases may not be relied upon to demonstrate that Rule 410 is not applicable with respect to the plea discussions that resulted in the deferred prosecution agreement in this case.

To determine whether the statements of the accused were made during plea discussions, courts consider all the facts on a case-by-case basis:

> To protect the process of plea discussions, a two-pronged analysis is used to determine the admissibility of statements made during alleged plea discussions. The first prong is subjective. Under it the court determines whether at the time of the statement the accused had a subjective expectation that he was negotiating a plea. The second prong is objective. Under it the court determines whether that expectation was reasonable under the circumstances. *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir.1978); *see also United States v. Doe*, 655 F.2d 920, 925 (9th Cir.1980); *United States v. O'Brien*, 618 F.2d 1234, 1240–41 (7th Cir.1980); *United States*

22

> *v. Pantohan*, 602 F.2d 855, 857 (9th Cir.1979). This analysis protects the plea discussion process by preserving the accused's subjective expectations, while at the same time limiting self-serving, post hoc statements by the accused.

*U.S. v. Swidan*, 689 F. Supp. 726, 728 (E.D. Mich.,1988). Here, defendants provide no specific information concerning what statements were made to the prosecuting attorney that they believe are protected by Rule 410. Defendants' assertion alone is simply not sufficient to demonstrate that any and all statements made by defendants to the government were made with the expectation that they were negotiating a plea agreement and that that belief was reasonable.

Defendants' motion in limine with respect to statements made in discussions leading to the deferred prosecution agreement is DENIED without prejudice.

## IV.   Conclusion

Plaintiff Michael R. Escue's October 25, 2011 motion to compel production of documents and deposition responses and for costs (doc. 116) is DENIED in part and GRANTED in part. Defendants' November 15, 2011 motions in limine concerning communications subject to attorney-client privilege and for return of privileged materials in plaintiff's possession and written and oral statements made in the course of plea discussions with the United States government that did not lead to a plea of guilty pursuant to Evidence Rules 401, 402, and 410 (doc. 129) is DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P., and Eastern Division Order No. 91-3, pt. F, 5, either party may, within fourteen (14) days

after this Order is filed, file and serve on the opposing party a motion for

reconsideration by the District Judge.  The motion must specifically designate the

Order, or part thereof, in question and the basis for any objection thereto.  The District

Judge, upon consideration of the motion, shall set aside any part of this Order found to

be clearly erroneous or contrary to law.


                                       s/ Mark R. Abel
                                        United States Magistrate Judge